583 A.2d 21

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Richard D. WICKS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 1990.

Decided Nov. 28, 1990.

William A. Kuhar, Jr., Asst. Counsel, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Pittsburgh, for appellant.

William W. Acker, Pittsburgh, for appellee.

Before DOYLE and McGINLEY, JJ., and BLATT, Senior Judge.

DOYLE, Judge.

The Pennsylvania Department of Transportation (Department) appeals an order of the Court of Common Pleas of Allegheny County which vacated the suspension of Richard D. Wicks' driver's license by the Department pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1]

At the hearing de novo before the common pleas court, Officer Shelly Jackson of the City of Pittsburgh Police Department testified that she discovered Wicks slumped over the driver's side of a parked vehicle. She smelled an odor of alcohol coming from the vehicle when she ap-

---

1. Section 1547(b) of the Code provides for the suspension of a driver's license for a period of one year upon the refusal to submit to a chemical test to determine blood alcohol content.

proached it and observed an open bottle of liquor. She attempted to get Wicks' attention. At first he would not wake up and moaned and groaned. He then woke up and said something which Jackson could not understand. She asked Wicks to get out of the vehicle and when Wicks tried to do so, Jackson had to keep him from falling out of the automobile. After Wicks did manage to get out, he swerved and swayed, at which point, Jackson arrested him for driving while intoxicated. Wicks was placed in a police van and taken to the police station for a breathalyzer test. When Police Officer Cindy Lou Deitrich asked Wicks to give his name and address and other pertinent information, Wicks refused to provide the information and he further refused to cooperate. Deitrich testified that Wicks was advised that he would lose his driver's license for one year if he failed to take the test. Deitrich also testified that she told Wicks that if he did not give her the information, she was going to interpret his silence as a refusal and that as a result, his driver's license would be suspended for one year. Wicks failed to give the requested information and never took the breathalyzer test. *Wicks was never read his Miranda* [2] *warnings;* but on the other hand, Wicks was never informed that his *Miranda* right to counsel was inapplicable to the breathalyzer test. The Department subsequently informed Wicks that his license was suspended for failure to submit to the test.

The common pleas court sustained Wicks' appeal. The Court reasoned that under *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989), and *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), the failure of the police to give Wicks *Miranda* warnings coupled with the failure to warn Wicks that the right to counsel is not applicable to taking a breathalyzer test resulted in Wicks' inability to make a knowing and conscious refusal. The Department

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

now appeals to our Court.[3]

■ The issue presented to us by the Department is whether, under *O'Connell* and *McFadden,* an officer is *required* to inform a motorist that he/she does not have a right to consult with an attorney, or anyone else, before taking a chemical test when the motorist does not request to speak to or call an attorney, or anyone else, and when *Miranda* warnings are never given.

■ The basic rubric that we have articulated to sustain a license suspension under Section 1547(b)(1) of the Code is that the Department must prove that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990).

■ Clearly, the Department satisfied its initial burden of proof in this case. Once it did so, under our previous case law the burden then shifted to the licensee to prove by competent evidence that he was unable to make a knowing and conscious refusal. *Id.*

Wicks testified at the hearing that he refused to take the test because he believed he had the right to talk to his attorney first. He testified as follows:

## DIRECT EXAMINATION

Q. And what did she [Officer Deitrich] say to you about that?

A. She said if I didn't take the test, if I refused the test, I would lose my license for a year.

---

**3.** Our scope of review where the lower court hears the matter de novo is limited to a determination of whether or not the trial court based its findings on substantial evidence or committed an error of law. *Woods v. Department of Transportation, Bureau of Traffic Safety,* 116 Pa.Commonwealth Ct. 294, 541 A.2d 846 (1988).

Q. Was any comment made to you about your right to counsel in making this decision?

A. No.

Q. Okay, and at that time what was your belief with respect to your right to counsel?

A. I believed that maybe I could get an attorney, have an attorney present, because I felt that you aren't proven guilty until you have an attorney there.

Q. And was that the reason that you refused the test?

A. Yes.

Q. Were you confused at the time about your ability to have an attorney present before refusing the examination?

A. No.

Q. Were you confused is my question.

A. In a sense. In a sense not.

Q. In a sense did you *believe* you had a right to an attorney before making the decision?

A. Yes. *I believed that I did have a right to an attorney.*

## CROSS-EXAMINATION

Q. Mr. Wicks, did Officer Deitrich tell you several times you had no right to an attorney at that time?

A. No, she did not.

Q. She did inform you though, that your refusal to take the test would result in a suspension, is that correct?

A. Yes.

(Emphasis added.) Of critical significance in the above colloquy is the absence of any testimony by Wicks that he *asked* to speak to or see an attorney or anyone else before he took the breathalyzer test. He only testified that he *believed* he had that right.

In *O'Connell,* a licensee *was* given his *Miranda* warnings, including the right to speak to a lawyer before answering any questions, was asked by the police to take a

breathalyzer test and refused because he was not permitted to contact his attorney before taking the test. The Supreme Court held that confusion resulted in the mind of the licensee when he first was read his *Miranda* rights and then immediately afterwards was asked to submit to a breathalyzer test. The Supreme Court held that when this sequence of events occurs, law enforcement officials are required to inform a licensee that he/she is not entitled to consult with an attorney or any one else before taking a breathalyzer test.[4]

The Supreme Court stated:

> [W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*O'Connell*, 521 Pa. at 252, 555 A.2d at 878.

In *Appeal of Attleberger*, 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990, contemporaneously with this opinion), we distinguished *O'Connell* from a situation in which the licensee was never given his *Miranda* warnings before being asked to submit to a blood alcohol test. The licensee in *Attleberger* was given a preliminary breath test, was arrested, was never given *Miranda* warnings, was asked to submit to a blood alcohol test and refused to do so because he had already taken a preliminary breath test. In that case we held that the confusion that the licensee experienced was not the *O'Connell*-type confusion. We noted that the *O'Connell*-type confusion results only when the

---

4. In *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990, contemporaneously with this opinion), we held that where *Miranda* warnings precede the chemical test request and the implied consent warning (*i.e.,* the "*O'Connell* sequence"), such a juxtaposition is per se confusing.

licensee is first given his/her *Miranda* warnings and then is asked to submit to a chemical test. We further refused to extend *O'Connell* to cases in which the licensee is confused about whether he should submit to a blood alcohol test after taking a preliminary breath test.

In the case *sub judice, Wicks was never given any Miranda warnings.* Furthermore, he never testified that he refused to take the breathalyzer because he wished to talk to his attorney first.[5] Thus, the events which would trigger the duty of the police, under *O'Connell,* to inform him that he was not entitled to consult with anyone, simply were not present in Wicks' case.

Wicks also argues that he could not have made a knowing and conscious refusal because his silence when asked to take the breathalyzer test was due to his alleged irrational or semi-conscious state. We have held that anything substantially less than an unqualified, unequivocal assent to take a breathalyzer test constitutes a refusal under Section 1547 of the Vehicle Code. *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa.Commonwealth Ct. 108, 468 A.2d 891 (1983). Also, when a licensee claims that he or she was incapable of taking the test for medical reasons, the licensee must present medical testimony to support the assertion of incapability unless there is an obvious medical infirmity. *Department of Transportation, Bureau of Traffic Safety v. Potter,* 118 Pa.Commonwealth Ct. 524, 545 A.2d 979 (1988). Moreover, we have held that a licensee's advanced state of intoxication which renders him incoherent is not sufficient to satisfy the knowing and conscious refusal test. *Id.* Wicks failed to produce medical testimony to support a physical incapability of taking the test. He therefore failed to satisfy his burden

5. In *Department of Transportation, Bureau of Driver Licensing v. McGarvey,* 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990), where the licensee did ask to speak to an attorney, but was not given her *Miranda* rights, we held that the police are bound to advise the licensee that he or she does not have the right to speak to an attorney, or anyone else, prior to submitting to a chemical test.

of proving that he did not make a knowing and conscious refusal.

Reversed.

## ORDER

NOW, November 28, 1990, the order of the Common Pleas Court of Allegheny County in the above-captioned matter is hereby reversed.