623 A.2d 958

Mary DAVENPORT, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 22, 1993.

Decided March 26, 1993.

416

Michael R. Lynn, for appellant.

David R. White, Asst. Counsel–Appellate Section, for appellee.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Mary Davenport appeals from an order of the Columbia County Court of Common Pleas which upheld the imposition

of a one-year suspension of her driver's license by the Department of Transportation, Bureau of Driver Licensing (DOT) for failure to submit to chemical testing in accordance with Section 1547 of the Vehicle Code (Code), 75 Pa.C.S. § 1547.

On December 20, 1990, Davenport was arrested for violating Section 3731 [1] of the Code which prohibits the operation of a vehicle while under the influence of alcohol and/or controlled substances. She was arrested after driving into the office parking lot of her counsel, whom she alleges she was going to see for professional advice concerning a parked car she had just hit. The arresting officer gave *Miranda* warnings to Davenport, whom he described as incoherent and upset, and requested she submit to a chemical test of her blood. According to his own testimony, the officer warned Davenport on several occasions that failure to assent to the test would result in a one-year suspension of her driver's license. Davenport agreed to the test, and, accordingly, was transported to a hospital. At the hospital, however, Davenport refused to submit to the test, despite further warnings concerning the loss of her license.

Thereafter, DOT notified Davenport that, due to her refusal to submit to chemical testing, her driver's license would be suspended for one year pursuant to Section 1547 of the Code. Davenport challenged the suspension in a common pleas court hearing *de novo*.

At the trial court hearing, Davenport contended that she asked to speak with counsel at the parking lot and again at the hospital, but was told by the police that she did not have that privilege. The arresting officer, in contrast, testified that Davenport never asked to speak to an attorney until she was at the police station. A lab technician at the hospital testified that she heard the implied consent warnings, and that Davenport refused to take the test, stating as her reason that she knew she was intoxicated. Davenport testified that her knowledge of her intoxication, a fear of needles, lack of legal counsel and the fact that she was upset were her reasons for refusing the test. She testified further that she did not know

1. 75 Pa.C.S. § 3731.

she was under arrest until just before she left the hospital, or that she could lose her license until she arrived at the police station.

The trial court sustained Davenport's suspension by order dated January 31, 1992. Davenport now appeals to this Court, and has obtained a common pleas court stay of her suspension pending this appeal. Our scope of review is to determine whether the trial court's findings are supported by competent evidence, or errors of law have been committed, or whether the trial court has abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Lello,* 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990).

Davenport argues that her refusal to submit to a chemical test was not voluntary, knowing or conscious due to her confusion over the inapplicability of *Miranda*[2] rights to chemical testing, and the failure of the police to explain the inapplicability pursuant to *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

During arrests pursuant to Section 3731 of the Code, the police are required to specifically warn a licensee that a refusal to submit to a chemical test will result in a one-year suspension of her driver's license. *O'Connell,* 521 Pa. at 249, 555 A.2d at 876. Furthermore, whenever *Miranda* warnings are given prior to a police request for chemical testing, as they were in this case, the police are obliged to inform the licensee that *Miranda* rights are inapplicable to chemical testing procedures. *O'Connell,* 521 Pa. at 252, 555 A.2d at 878. Failure to inform a licensee that she has no right to see an attorney prior to chemical testing renders a suspension improper, as a driver should not lose her license for a refusal that was not knowing and conscious. *Wilson v. Department of Transportation,* 135 Pa.Commonwealth Ct. 339, 348, 581 A.2d 252, 257 (1990).

The Pennsylvania Supreme Court has recently made clear that the requirement of *O'Connell* warnings regarding counsel

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"is simply *not* contingent upon the arrestee exhibiting confusion concerning his right to speak with an attorney, or actually requesting to speak with an attorney." *Commonwealth v. Danforth,* 530 Pa. 327, 332, 608 A.2d 1044, 1046 (1992) (emphasis in original).

Moreover, as discussed further below, this Court in interpreting *O'Connell* has held that the police must explain *why Miranda* is inapplicable, in order to allay confusion on the part of a licensee, who might not understand why she is first told of her right to speak with an attorney, but then told she has no right to speak with an attorney before she submits to the chemical test. *Department of Transportation, Bureau of Driver Licensing v. McGarvey,* 136 Pa.Commonwealth Ct. 358, 364, 583 A.2d 39, 42 (1990). The explanation must distinguish *Miranda* rights and the prerequisites of the chemical testing, differentiating the criminal from the civil. *McGarvey.*

Having set forth the state of the law, we now examine the trial court's decision. The court wrote:

> While the Defendant testified that she requested several times to consult an attorney, that of itself does not vitiate the refusal. In this case testimony reveals that she was amply warned on several occasions of the ramifications of the refusal. (See *Henderson v. Com. D.O.T.,* 553 A.2d 105, 123 Pa.Comwlth. 123[1] (1989).
>
> It should further be noted the instant case is factually distinguishable from *Wilson v. Com. D.O.T.,* 581 A.2d 252 [135 Pa.] Comwlth [339] (1990), and the progeny of cases that hold that the police must inform the Defendant that the Miranda rights are not applicable to the test when a request is made to consult an attorney. In the instant case the Defendant expressed no confusion as to the extent of her Miranda rights when asking for an attorney.

*Commonwealth v. Davenport* (No. 479 of 1991, filed January 31, 1992) slip op. at 2–3.

It is evident that the trial court erred in holding that the *O'Connell* warning regarding *Miranda* rights was not

required because Davenport "expressed no confusion." Whether a licensee expresses confusion is not relevant. *See Danforth,* 530 Pa. at 332, 608 A.2d at 1046. The trial court also erred in relying on its finding that Davenport was "amply warned on several occasions of the ramifications of the refusal." Mere warnings of the ramifications of refusing a chemical test are not enough; a licensee who has been read her *Miranda* rights must be informed that she does not have the right to counsel prior to deciding whether to perform chemical testing. *O'Connell,* 521 Pa. at 252, 555 A.2d at 878.[3]

The issue in this case is not whether *O'Connell* warnings were required; it is clear from the facts of this case that they were. The only question in this case, and one which was not addressed by the trial court, is whether the police sufficiently complied with the requirements of *O'Connell.*

█ The record in this case is devoid of evidence supporting an affirmative answer to this question. The only relevant evidence is Davenport's own testimony that she requested an attorney and was told that she did not have that privilege. Even if this admission could form the basis of a finding that she was told that she had no right to counsel, we are still left with no evidence that she was given sufficient explanations— or any explanation at all—as to *why* she had no right to counsel.

As mentioned above, in a line of cases beginning with *McGarvey,* this Court has examined the sufficiency of explanations and held that a bare warning that a licensee has no right to counsel with regard to chemical testing is not enough to meet the requirements of *O'Connell.* We have explained our rationale as follows:

> We believe that because the concern in *O'Connell* relates to assisting licensees to make knowing and conscious refusals, a goal which can only be achieved by providing them

---

3. We note here that the law in driver's license suspension cases has been somewhat confused. Indeed, both parties argue the issues of whether Davenport actually requested an attorney and whether she was confused, two issues which the Supreme Court in *Danforth* made clear do not affect the affirmative duty of arresting officers to give *O'Connell* warnings.

with relevant information as to their rights, a bare warning that *Miranda* rights do not apply to the testing procedures is insufficient. A truly meaningful warning requires, in addition, an explanation as to why those rights do not apply. *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Commonwealth Ct. 82, 87, 606 A.2d 1270, 1273–1273, *petition for allowance of appeal denied*, 531 Pa. 657, 613 A.2d 561 (1992).

In *Sorg*, beyond setting forth the rationale for our holding in *McGarvey*, we also detailed what *is* sufficient under *O'Connell*. We held that while no particular language is required, if *Miranda* warnings are given, an *O'Connell* explanation must include at least the following information:

1. That an individual's constitutional rights when accused of a crime do not apply to the chemical testing procedure under Pennsylvania's Vehicle Code.

2. Specifically, that the licensee has no right to consult with counsel or anyone else before taking the test.

3. That the *Miranda* protections are not applicable because chemical testing is a civil procedure, not a criminal proceeding, and the *Miranda* protections only apply in criminal proceedings, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

*Id.*, 147 Pa.Commonwealth Ct. at 90, 606 A.2d at 1274. We therefore concluded that a police officer's statement that the licensee did not have the right to consult with an attorney was not enough to satisfy *O'Connell.*[4]

Having reviewed our prior cases, we must conclude in the case now before us that Davenport's refusal was not voluntary, knowing or conscious. There is no evidence in the record that

4. In a decision filed contemporaneously with *Sorg*, we affirmed a trial court set-aside of a license suspension because "the *O'Connell* explanation must include not only a statement that the right to contact an attorney or someone else applies only to criminal proceedings, but also an explanation that chemical testing is not such a *criminal* proceeding *but is a civil proceeding*," and "[n]o such explanation was given to Licensee here." *Department of Transportation, Bureau of Driver Licensing v. Hoover*, 147 Pa.Commonwealth Ct. 70, 74, 606 A.2d 1264, 1266,

Davenport was given any explanation beyond a bare warning as to why she did not have the right to counsel prior to the chemical test. Indeed, DOT admits in its brief that the warnings in this case do not satisfy the standards for *O'Connell* warnings set forth in *Hoover* and *Sorg*. Therefore, we conclude that the police procedure in the case before us did not comport with the mandates of *O'Connell* and subsequent authority, and, thus, the suspension of Davenport's license cannot stand.

Based on the foregoing discussion, the trial court erred as a matter of law and the suspension of Davenport's driver's license was improperly sustained. Accordingly, the order of the trial court sustaining the suspension is reversed.

## ORDER

AND NOW, this 26th day of March, 1993, the order of the Columbia County Court of Common Pleas, No. 479, dated January 31, 1992 is hereby reversed.

---

*petition for allowance of appeal denied,* 531 Pa. 656, 613 A.2d 561 (1992) (emphasis in original).

Citing *McGarvey* and *Sorg,* this Court reinstated a license where an arresting officer warned the licensee that "you do not have the right to consult with an attorney of [sic] anyone else prior to taking this test," holding that "this language is clearly insufficient to meet the requirements of *O'Connell*". *Bell v. Department of Transportation,* 147 Pa.Commonwealth Ct. 157, 166, 607 A.2d 304, 309, *petition for allowance of appeal denied,* —— Pa. ——, 618 A.2d 403 (1992).

Citing *Sorg,* we again sustained a licensee's appeal "[b]ecause a form used by the Township Police Department advises licensees that they do not have the right to consult with an attorney prior to taking the test but does not inform licensees *why* this right does not apply to the chemical testing procedure," and thus "this warning is insufficient to comply with *O'Connell* as interpreted by *Sorg*." *Department of Transportation, Bureau of Driver Licensing v. Foster,* 148 Pa.Commonwealth Ct. 44, 49, 609 A.2d 852, 855, *petition for allowance of appeal granted,* —— Pa. ——, 624 A.2d 112 (1992) (emphasis in original).

Finally, we affirmed a trial court's overturning of a licensee's suspension where a relatively long form containing warnings was read verbatim to the licensee by a police officer, and was read by the licensee himself, but "the warnings did no more than inform [him] that *Miranda* rights did not apply, rather than explain why they did not apply." *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 149 Pa.Commonwealth Ct. 170, 177, 612 A.2d 634, 637, *petition for allowance of appeal granted,* —— Pa. ——, 619 A.2d 701 (1993).