Alan J. DUDEK, Appellant,

v.

COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 26, 1996.

Decided Sept. 24, 1996.

---

David S. Shrager, for Appellant.

Timothy P. Wile, Assistant Counsel In–Charge, and Harold H. Cramer, Assistant Chief Counsel, for Appellee.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Alan J. Dudek appeals an order of the Court of Common Pleas of Allegheny County which dismissed a statutory appeal from the Department of Transportation's (DOT) imposition of a one year suspension of his driver's license.

The relevant facts are as follows. On December 9, 1993, Officer Jeffrey Lukacs of the West Mifflin Police Department in Allegheny County observed Dudek driving his vehicle in an erratic manner. The vehicle was traveling at approximately 10 miles-per-hour in a 35 miles-per-hour zone, and at various times, was swerving on and off the roadway and crossing the center line of traffic.

Officer Lukacs stopped Dudek's vehicle and observed that Dudek had a strong odor of alcohol on his breath, slurred speech, and stumbled when he walked. After Dudek failed two sobriety field tests, Officer Lukacs arrested Dudek for driving under the influ-

ence of alcohol and requested that he submit to a blood alcohol test. Officer Lukacs informed Dudek of the Implied Consent Law,[1] and that he did not have the right to speak with an attorney before he decided to take the test. Dudek refused to submit to the blood test.

Office Lukacs transported Dudek to Homestead Hospital and repeated his request that Dudek submit to a blood alcohol test. Again, Dudek refused. At that point, Dudek demanded to speak to a Federal Marshal, but was informed by Officer Lukacs that Dudek had no right to speak to a Federal Marshal and that none would be called.

Officer Lukacs then transported Dudek to the police station where Officer Lukacs read to Dudek the warnings listed on DOT's DL–26 form, an implied consent refusal form. Officer Lukacs instructed Dudek to read the DL–26 form which he did and then signed the form. Nothing in the record indicates that, at any time during the above events, Officer Lukacs provided Dudek with *Miranda*[2] warnings.

On December 29, 1993, DOT sent Dudek a Notice of Suspension, informing him that his license had been suspended for one year as a result of his refusal to submit to a chemical test. Dudek appealed the decision to the Court of Common Pleas of Allegheny County which, after a de novo hearing, dismissed the appeal. This appeal followed.

On appeal, Dudek contends that the lower court erred in dismissing his appeal because (1) Officer Lukacs lacked reasonable grounds to believe that Dudek was operating his vehicle under the influence of alcohol, and (2) Dudek demonstrated overt confusion by demanding to speak to a Federal Marshal and therefore Officer Lukacs had an obligation to dispel such confusion.[3]

■ To sustain a license suspension under Section 1547 of the Vehicle Code, DOT has the burden to establish that the driver involved: (1) was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating, or actually controlling or operating the movement of a motor vehicle, while under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusing the test would result in a license suspension. *Vinansky v. Commonwealth Department of Transportation,* 665 A.2d 860 (Pa.Cmwlth.1995).

■ The test to determine whether a police officer has reasonable grounds is not very demanding. *Department of Transportation v. Johnson,* 102 Pa.Cmwlth. 302, 518 A.2d 8 (1986). In *Department of Transportation v. Dreisbach,* 26 Pa.Cmwlth. 201, 363 A.2d 870 (1976), we set forth the reasonable grounds test:

> [F]or 'reasonable grounds' to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. We are dealing here with the authority to request a person to submit to a chemical test and not with the admission into evidence of the result of

---

1. Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, commonly known as the Implied Consent Law, provides that:

   [a]ny person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance . . .

   That section further provides that the police have a duty to inform a motorist that his or her operating privilege will be suspended upon refusal to submit to chemical testing; the suspension for refusal is for a period of 12 months.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. We must mention that the Statement of the Question Involved in Dudek's brief was very poorly crafted. Dudek's nebulous question "Did the lower court err in dismissing the appeal of the appellant" provides no insight whatsoever as to the issues Dudek wishes this Court to resolve. See Pa.R.A.P. 2116. Despite this deficiency, we were able to distill Dudek's issues from the argument portion of his brief, from which we were able to conduct meaningful appellate review.

such a test. The only valid inquiry on this issue at the de novo hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor. (Footnotes omitted.)

Furthermore, questions of credibility are determined by the trial court, and if there is competent evidence in the record to support those findings, we will not disturb the fact finder's decision. *Department of Transportation v. Korchak*, 506 Pa. 52, 483 A.2d 1360 (1984).

■ It is clear that Officer Lukacs had reasonable grounds to believe that Dudek was under the influence of alcohol while operating his motor vehicle.[4] Officer Lukacs observed Dudek driving at a very slow speed and in an erratic manner, swerving on and off the roadway, and crossing the center lane of traffic. Moreover, Officer Lukacs testified that after he stopped Dudek's car, he noticed that Dudek had a strong odor of alcohol on his breath, slurred his speech, and stumbled as he walked. Therefore, the trial court did not err in finding that Officer Lukacs reasonably believed that Dudek was driving under the influence.

■ Dudek next argues that suspension of his driver's license should be invalidated because he was not able to make a knowing and conscious refusal of the blood test. Dudek contends that his demand to see a Federal Marshal overtly indicated confusion over what rights Dudek possessed in refusing to submit to the chemical test. He also asserts that Officer Lukacs had a responsibility to explain why the implied consent provision under Section 1547 is a civil matter which does not carry with it the right to speak to an attorney before taking the test.

In *Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), our Supreme Court held that a driver may be confused by the juxtaposition of a criminal arrest and a civil request for chemical testing under the Implied Consent Law, causing a driver to erroneously believe that his or her *Miranda* rights apply to chemical testing. However, in *Department of Transportation v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994), our Supreme Court explained that a proper *O'Connell* warning need include only the following information: "first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing." *Ingram*, 538 Pa. at 255, 648 A.2d at 294–95. In *Ingram*, the Court held that police need not explain to a motorist that chemical testing is a civil matter, distinct from the criminal arrest, reversing prior case law holding that such information was required. *See e.g. Department of Transportation v. Sorg*, 147 Pa.Cmwlth. 82, 606 A.2d 1270 (1992).

■ In the present case, after Officer Lukacs requested a blood test, Dudek demanded to speak to a Federal Marshal, apparently believing that a Federal Marshal should be involved in his arrest because he possessed a "federal driver's license." In *Appeal of Attleberger*, 136 Pa.Cmwlth. 329, 583 A.2d 24 (1990), *appeal dismissed as improvidently granted*, 531 Pa. 450, 613 A.2d 1203 (1992), this Court held that an *O'Connell* confusion exists "only when a licensee is confused *over his constitutional rights*, (not *any* confusion)." *Id.* 583 A.2d at 27. (Emphasis in original.) Dudek's confusion, if he was confused, derived from his erroneous belief that the Federal Marshals had jurisdiction over him and his "federal driver's license," and not to the applicability of his *Miranda* rights

---

4. Dudek asserts that he had "bad leg," as a result of a prior motorcycle accident, which affected the field sobriety tests and rendered Officer Lukacs' belief unreasonable as to Dudek driving under the influence of alcohol. This argument is without merit. An officer does not have to be correct in his belief that a driver had been operating a vehicle while intoxicated. *Dreisbach*. Therefore, even if Dudek's "bad leg" distorted the sobriety tests, that fact cannot nullify the reasonableness of Officer Lukacs' belief.

to the blood test. Therefore, Dudek's confusion did not require an *O'Connell* warning.[5]

■ In any event, it is clear from the record that Officer Lukacs informed Dudek of the Implied Consent Law and, in response to Dudek's "confusion," provided a proper *O'Connell* warning. Officer Lukacs requested that Dudek submit to a chemical test and warned him that failure to do so would result in a one year suspension of his driver's license. Officer Lukacs also informed Dudek, in compliance with *Ingram,* that he did not have the right to speak to an attorney before submitting to the test, and further instructed Dudek that he had no right to speak to a Federal Marshal. In addition, Officer Lukacs read to Dudek the warnings listed on DOT's DL–26 form and had Dudek read and sign the form.[6] For these reasons, the trial court correctly concluded that Officer Lukacs had satisfied the requirements of *O'Connell.*

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, September 24, 1996, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

5. Dudek also argues that he had signed the DOT DL–26 form only because he thought his operating privileges had already been suspended due to the confiscation of his license at the scene of the arrest by another officer. As a result, Dudek contends that his signing the form was not a knowing refusal as required in *O'Connell.* We disagree. In *Attleberger,* 583 A.2d at 27, we held that *O'Connell* does not "add a safety net to someone falling into such self-induced and self-destructive confusion about what the law is or should be"; hence, his erroneous belief that his license was suspended by the police cannot vitiate his refusal.

6. The warnings listed on DOT's DL–26 form provide:
   1. Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code.
   2. I am requesting that you submit to a chemical test of _____ (breath, blood or urine. *Officer chooses the chemical test.*)
   3. It is my duty, as a police officer, to inform you that if you refuse to submit to the chemical test your driving privilege will be suspended for a period of one year.
   4. As a police officer, it is my duty to explain to you that the constitutional rights due you in a criminal prosecution as set forth in the *Miranda* decision do not apply to chemical testing under the implied consent law. Specifically, you do not have a right to consult with a lawyer or anyone else prior to taking the chemical test nor do you have the right to remain silent when a police officer asks you to submit to a chemical test. Your continued request to speak to a lawyer or anyone else after this explanation is given, or your silence when asked to submit to a chemical test, will be considered as a refusal of the chemical test subjecting you to the suspension of your driving privilege.

   This statement substantially tracks what we stated in *Sorg* and *Department of Transportation, Bureau of Driver Licensing v. Hoover,* 147 Pa. Cmwlth. 70, 606 A.2d 1264 (1992) was required to fully inform a motorist of his rights, and was held by the Supreme Court in *Ingram* to satisfy, as a matter of law, the *O'Connell* warning.